

Brad Seligman (SBN 83838)
bseligman@lewisfeinberg.com
Bill Lann Lee (SBN 108452)
blee@lewisfeinberg.com
Julie Wilensky (SBN 271765)
jwilensky@lewisfeinberg.com
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA  94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839

Debo P. Adegbile*
dadegbile@naacpldf.org
Elise Boddie*
eboddie@naacpldf.org
ReNika C. Moore*
rmoore@naacpldf.org
Ria A. Tabacco*
rtabacco@naacpldf.org
NAACP LEGAL DEFENSE
& EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, NY 10013
Telephone: (212) 965-2200
Facsimile: (202) 226-7592

Nancy C. DeMis* (SBN (inactive)
114770)
ncd@gsscd.com
Susan R. Fiorentino*
sfiorentino@gsscd.com
GALLAGHER, SCHOENFELD,
SURKIN, CHUPEIN & DEMIS, P.C
25 West Second Street
Media, PA 19053
Telephone: (610) 565-4600
Facsimile: (610) 566-8257

* Pro Hac Vice Application
forthcoming

*Attorneys for Plaintiffs and the
Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC,<br><br>Defendants. | Case No.:  SACV 12 - 01138 AG (ANx)<br><br>**COMPLAINT FOR DAMAGES: 42 U.S.C. § 1981**<br><br>**CLASS ACTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

COMPLAINT

1    Plaintiffs bring this action on behalf of themselves and all others similarly

2  situated for race discrimination in employment by The Wet Seal, Inc., The Wet Seal

3  Retail, Inc., Wet Seal GC, Inc., and Wet Seal GC, LLC (collectively, "WET

4  SEAL"), and allege as follows:

5                    **INTRODUCTION**

6    1.    This action challenges WET SEAL's policy and practice of

7  discriminating against African-American store management employees at Wet Seal

8  and Arden B. stores from at least 2008 to the present, in violation of 42 U.S.C. §

9  1981. This policy was adopted by the most senior executives of the company, and

10  resulted in the targeting of African-American employees for termination because of

11  their race and color, and a denial of pay and promotions for African Americans on

12  the same basis as white store employees.

13    2.    In addition to strong circumstantial evidence that WET SEAL enforced

14  an illegal policy of discrimination, direct evidence in the form of emails and

15  testimony of former managers also demonstrates that WET SEAL corporate

16  executives at the highest levels instructed managers to terminate African-American

17  employees, and to "diversify" their work forces by hiring and promoting white

18  employees who fit the WET SEAL "brand image." In one email, the second in

19  command of WET SEAL, the Senior Vice President of Store Operations, reporting

20  on a series of store visits, stated to the Vice President of Store Operations and a

21  district manager that, "African American dominate – huge issue." High-level WET

22  SEAL corporate executives also instructed a district manager to "clean the entire

23  store out" by firing all African-American employees at one or more stores, and they

24  threatened to terminate Store Managers if they did not staff more white employees

25  than African-American employees in their stores.

26    3.    Plaintiffs bring this case as a class action on behalf of current and

27  former WET SEAL store management employees and seek back pay, general

28  damages, and punitive damages.

**PARTIES**

4.     Plaintiff Nicole Cogdell is an African-American woman who was formerly employed by WET SEAL at its Springfield, Pennsylvania and King of Prussia, Pennsylvania stores.  She is a resident of Delaware County, Pennsylvania.

5.     Plaintiff Kai Hawkins is an African-American woman who was formerly employed at WET SEAL stores in California, Pennsylvania and New Jersey, and was last employed at the Cherry Hill, New Jersey store.  She is a resident of Delaware County, Pennsylvania.

6.     Plaintiff Myriam Saint-Hilaire is an African-American woman who was formerly employed by WET SEAL at its King of Prussia store.  She is a resident of Delaware County, Pennsylvania.

7.     Defendant The Wet Seal, Inc. is a Delaware corporation headquartered in Foothill Ranch, Orange County, California.

8.     Defendant The Wet Seal Retail, Inc. is a subsidiary of The Wet Seal, Inc. and is a Delaware corporation headquartered in Foothill Ranch, Orange County, California.

9.     Defendant Wet Seal GC, Inc. is a subsidiary of The Wet Seal, Inc. and is a Virginia corporation headquartered in Foothill Ranch, Orange County, California.

10.     Defendant Wet Seal GC, LLC is a subsidiary of The Wet Seal, Inc. and is a Virginia limited liability company headquartered in Foothill Ranch, Orange County, California.

11.     Defendants The Wet Seal, Inc., The Wet Seal Retail, Inc., Wet Seal GC, Inc., and Wet Seal GC, LLC are collectively referred to as "WET SEAL."

12.     WET SEAL sells women's clothing and accessories at its approximately 550 stores under the Wet Seal and Arden B. store names (collectively referred to as "WET SEAL stores").  It employs over 7,000 employees, including 2,000 full-time employees.

## CLASS ACTION ALLEGATIONS

13.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of current and former African-American store management level employees of WET SEAL. "Store management level" employees include current and former Assistant Managers, Co-Managers, and Store Managers of WET SEAL.

14.    The members of the class are sufficiently numerous that joinder of all members is impracticable.  On information and belief, the class includes over 250 class members.

15.    There are questions of law and fact common to the class, and these questions predominate over individual questions.  Such questions include, among others:  (1) whether WET SEAL has a general policy of discrimination with regard to pay, promotion, and termination of African-American store management level employees; (2) whether WET SEAL has a pattern or practice of discrimination with regard to pay, promotion, and termination of African-American store management level employees; and (3) whether punitive damages are warranted.

16.    The claims alleged by Plaintiffs are typical of the claims of the class. All Plaintiffs were African-American store management level employees who have been harmed by WET SEAL's discriminatory policies and practices.

17.    Plaintiffs will fairly and adequately represent the interests of the class.

18.    If the class is certified, Plaintiffs will provide the "best notice practicable under the circumstances" to the class pursuant to Fed. R. Civ. P. 23(b)(c)(2)(B), including but not limited to mail, posting, and distribution to current employees.

19.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this

1    litigation.  The members of the class have been damaged and are entitled to

2    recovery as a result of WET SEAL's common and unfair discriminatory personnel

3    policies and practices.

4         20.    Particular issue certification of class liability is also appropriate under

5    Rule 23(c)(4) because such claims present only common issues, the resolution of

6    which would benefit the parties and serve judicial economy.

7                          **JURISDICTION AND VENUE**

8         21.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

9    1331 and 1343.

10        22.    This Court has personal jurisdiction over this action because WET

11   SEAL corporate headquarters are located in Foothill Ranch, California, which is in

12   Orange County, and WET SEAL does business in stores throughout this district and

13   the State of California.

14        23.    Venue is proper within this District pursuant to 28 U.S.C. § 1391(b),

15   because WET SEAL's headquarters are located in this District and WET SEAL

16   maintains branches throughout California and this District, and is subject to

17   personal jurisdiction in this District.  Moreover, a substantial part of the events,

18   acts, and omissions giving rise to the claims of Plaintiffs and the proposed class

19   occurred in this District.

20                    **WET SEAL POLICIES AND PRACTICES**

21        24.    Each WET SEAL store employs Sales Associates, Assistant Managers,

22   and Store Managers.  Larger stores also have a Co-Manager, an intermediate

23   position between Assistant Manager and Store Manager.  Store Managers report to

24   a District Manager, who typically supervises ten to twelve stores.  District

25   Managers report to Regional Managers.  On information and belief there are

26   currently four Regional Managers for WET SEAL, and during the relevant time

27   period, both Wet Seal and Arden B. stores moved from a separate reporting

28   structure to reporting to the same District and Regional Managers, and WET SEAL

1    store management employees have been promoted between Wet Seal and Arden B.

2    stores.  Regional Managers report to the Vice President of Store Operations, who in

3    turn reports to the Senior Vice President of Store Operations, who reports directly

4    to the CEO of WET SEAL.

5        25.    While a Store Manager may hire Sales Associates within limited pay

6    ranges, all hiring of such personnel at rates above these pay ranges must be

7    approved by district and higher level management.  On occasion, Store Managers

8    are directed or required by higher level managers, to hire, or not hire, specific

9    individuals for sales positions.  All promotions to store management level positions

10   must be approved by District and Regional Managers.  All store management pay

11   must be approved by District and Regional Managers, and, if pay exceeds company

12   pay ranges, the pay must be approved by the Vice President of Store Operations.

13   All terminations of store employees must be approved by District and Regional

14   Managers and the corporate Human Resources Department.

15       26.    WET SEAL has no formal promotion policy or application procedure

16   for store management positions it fills internally, nor does it post such openings.

17   Other than minimal experience and age requirements, it has no written criteria to

18   determine which employees should be promoted.  Store management pay is

19   supposed to be based on a pay scale tied to the size and profitability of each store.

20   In fact, frequent exceptions to this scale are granted by senior management.  There

21   are no written criteria that guide the granting of such exceptions.

22       27.    Although WET SEAL has a written non-discrimination policy, this

23   policy is neither enforced nor monitored for compliance.  On information and

24   belief, WET SEAL does not collect or compile accurate data, including the race and

25   ethnicity of applicants for hire and employees regarding hiring, pay, promotions, or

26   terminations.  On information and belief, for many years WET SEAL has not

27   prepared and filed accurate EEO-1 reports with the United States Equal

28   Employment Opportunity Commission ("EEOC") showing the racial and ethnic

1    demographics of its workforce as required by federal equal employment
2    regulations.
3         28.    WET SEAL has a general policy and practice of discriminating against
4    its nonwhite employees, and particularly its African-American employees.  This
5    policy and practice is manifested in the following ways:
6              a.    Failing and refusing to promote African-American store
7         employees to store management positions on the same basis as white
8         employees are promoted;
9              b.    Failing to pay African-American store management employees
10        at the same rates as similarly-situated white employees;
11             c.    Limiting promotion opportunities for African-American
12        employees at stores with a significant white clientele;
13             d.    Insisting on a "brand" or "image" of its employees that
14        predominantly reflects a white image, an image reinforced by WET SEAL's
15        advertising to the general public;
16             e.    Holding African-American store management employees to
17        higher performance standards than white store management employees;
18             f.    Terminating African-American store management employees on
19        the basis of their race and not performance; and
20             g.    Failing and refusing to take adequate steps to eliminate the
21        effects of its past discriminatory practices.
22        29.    The above-listed discriminatory policies and practices are and have
23   been devised, implemented, and enforced by a small group of the most senior
24   corporate managers, including WET SEAL's President and CEO, Senior Vice
25   President of Store Operations, Vice President of Store Operations, and corporate
26   Human Resources executives.  These senior officials have enforced these policies
27   through store visits, management meetings, and electronic and telephonic
28   communications to lower level management employees.  They have fired

1  management employees who opposed these policies, and ignored or rejected
2  recommendations by lower level managers to hire, pay, and promote African-
3  American employees on the same basis as white employees.  They have imposed
4  their own management and sales employee selections in stores.  Examples of the
5  implementation of this general policy and practice of discrimination include:

6        a.     Senior Vice President of Store Operations Barbara Bachman
7  ("Bachman") instructed a District Manager to "clean the entire store out" by
8  firing all African-American store management employees in or around
9  August 2008:

10        b.     After Bachman conducted a surprise store visit and realized that
11  the Store Manager she had previously approved was African-American, she
12  ordered the District Manager to terminate or demote the African-American
13  Store Manager, and replace her with a white manager.  She threatened to
14  terminate the District Manager if she did not terminate African-American
15  employees, and ordered her to terminate Store Managers that did not
16  "diversify" (i.e., increase the number of white employees in) their store work
17  force;

18        c.     Bachman instructed store management personnel of the WET
19  SEAL store at the King of Prussia Mall ("King of Prussia store") to hire more
20  employees who looked like a particular blond white sales associate;

21        d.     On March 3, 2009, Bachman sent an email to a District
22  Manager, copying Vice President of Store Operations Barbara Harris
23  ("Harris"), describing store visits she had conducted of twenty stores in the
24  Maryland and Philadelphia region.  Bachman wrote: "Global Issues . . .
25  Store teams – need diversity/African American dominate – huge issue."  A
26  true and correct copy of this email is attached as Exhibit 1 and incorporated
27  by reference;

28        e.     Bachman told a District Manager that the Regional Manager

must have "lost her mind" putting a black person in charge of a particular store. She instructed managers to "lighten up" their stores (i.e., terminate African-American and hire white employees). She informed a Regional Manager that there were "way too many" African-American store employees in the Maryland market;

f. Bachman targeted stores with primarily African-American employees to be "cleaned up" as an urgent priority, but did not target similarly-situated stores with mostly non-minority employees with comparable performance;

g. Director of Human Resources Patricia Sprowell made racially derogatory comments about female African-American employees to a newly hired Regional Manager, saying that such employees will get pregnant "if they touch the counter." She also stated that African-American employees were difficult to manage. On another occasion she instructed a Regional Manager to "figure out a way to get rid" of two African-American employees who had filed race discrimination complaints with the EEOC;

h. President and CEO Ed Thomas ("Thomas"), Senior Vice President Bachman, and Vice President Harris frequently made store visits, during or after which they instructed managers to "diversify" the work forces in stores with largely African-American employees and to hire and promote white employees who fit the "brand image." They made no such requests regarding stores that were staffed predominantly by white employees; and

i. Vice President of Store Operations Harris required a Regional Manager to provide photographs of her District Managers in a portfolio which was used to discuss and evaluate them as candidates for advancement within the company.

30. WET SEAL has relied on advertising that predominantly features white models as a means of projecting a "brand image," which was understood in

1   the company to mean white females.

2        31.    In order to protect African-American employees from discrimination,

3   managers have taken steps to ensure that African-American employees were not

4   working in the store front when a high level corporate executive made a store visit

5   by, for example, sending African-American employees to the back of the store or

6   on a lunch break when a visit by a corporate official was expected.

7        32.    On information and belief, since 2008, senior management positions,

8   including senior corporate managers, Regional Managers, and District Managers,

9   have been held almost exclusively by white employees.

10       33.    On information and belief, African-American store management level

11   employees are and have been paid less on average than similarly-situated white

12   employees, promoted at a lower rate and to less desirable stores, and fired at a

13   higher rate than white employees.

14                      **PLAINTIFF COGDELL**

15        34.    Plaintiff Nicole Cogdell ("Cogdell") was hired by WET SEAL on

16   November 20, 2008 as Store Manager for the WET SEAL retail store in the

17   Springfield Mall, Springfield, Pennsylvania ("Springfield Mall store").  Cogdell

18   had substantial prior retail management experience, including prior employment as

19   a Store Manager at WET SEAL approximately ten years earlier.

20        35.    Prior to being hired in 2008, Cogdell was interviewed in person by the

21   WET SEAL Philadelphia District Manager and by telephone by the WET SEAL

22   Regional Manager assigned to the Northeast Region, Ms. Davey ("Davey").

23        36.    While Cogdell was the Store Manager for the Springfield Mall store,

24   the objective and subjective performance metrics for that store improved

25   substantially, including:

26            a.    Increased retail sales;

27            b.    Decreased theft from the store; and

28            c.    Significantly improved cleanliness and orderliness of the store.

37.     At or around the same time, the King of Prussia store was experiencing significant problems in the following areas:

a.     Sales below projective levels;

b.     Significant shrinkage; and

c.     Significant reported issues regarding cleanliness and disorganization.

38.     The Philadelphia District Manager recommended Cogdell for Store Manager at the King of Prussia store, on or around January 2009.  Because the King of Prussia store was a busier store in a more lucrative market, and the pay for its Store Manager was higher than that for the Springfield Store Manager, this move was a promotion for Cogdell.  Cogdell was promoted to Store Manager at the King of Prussia store in January 2009.  On information and belief, at the time this promotion was approved, WET SEAL senior management was not aware that Cogdell was African-American.

39.     Under Cogdell's direction, the King of Prussia store improved substantially according to both objective and subjective measures utilized by WET SEAL to analyze store performance.  On or about Friday, February 27, 2009, at mid-day, Bachman visited the King of Prussia store along with the Philadelphia District Manager and other corporate officials.

40.     Cogdell and two African-American Sales Associates overheard Bachman express dismay to the Philadelphia District Manager that Cogdell was the Store Manager, saying she wanted someone with "blond hair and blue eyes."

41.     Cogdell reasonably felt betrayed, humiliated, and belittled by what she felt were Bachman's obviously racist comments and their implications for her own and her Sales Associates' value to WET SEAL.

42.     On information and belief, Bachman also stated to the Philadelphia District Manager that Regional Manager Davey "must be out of her mind" to have placed an African American in the position of Store Manager at the King of Prussia

1    store, and that the African-American Cogdell was not the "brand image" WET
2    SEAL wanted to project.
3         43.    On information and belief, later that same day (February 27, 2009),
4    Davey called Harris to complain that Bachman was being unfair and was not
5    looking at the objective measures, which showed substantial improvement in the
6    store's performance.  Harris assured Davey she would speak to Bachman about it.
7    Bachman terminated Davey from her position as Regional Manager on the
8    following Monday, March 2, 2009.  On information and belief, Davey was
9    terminated in retaliation for placing an African American, Cogdell, in the position
10   of Store Manager at the King of Prussia WET SEAL store, and for protesting
11   Bachman's criticisms of Cogdell as unfair.
12        44.    On Tuesday, March 3, 2009, Bachman sent an email to the
13   Philadelphia District Manager and others which stated that African-American
14   predominance on store teams was a "huge issue."
15        45.    On Tuesday March 3, 2009, Cogdell was advised by the Philadelphia
16   District Manager that her employment was being terminated.  On information and
17   belief, Bachman ordered the termination of Cogdell's employment because of
18   Cogdell's race, and advised the Philadelphia District Manager that if the
19   Philadelphia District Manager did not terminate Cogdell, the Philadelphia District
20   Manager would be fired.
21        46.    One day after she received notice of her termination, March 4, 2009,
22   Cogdell contacted the EEOC and filed a charge of discrimination based on race, in
23   violation of Title VII and the Pennsylvania Human Relations Act.  On information
24   and belief the EEOC's investigation in response to charges filed against WET
25   SEAL by Cogdell and others is ongoing.
26        47.    On March 5, 2009, Cogdell contacted Barbara Arneklev ("Arneklev"),
27   WET SEAL's Vice President of Human Relations, to complain about
28   discriminatory comments and treatment and left a voice message requesting a call.

48.     When Arneklev returned Cogdell's call on March 5, 2009, Cogdell told Arneklev that she was going to her doctor the next day and preferred to communicate in writing.

49.     Cogdell was greatly distressed by these events and suffered loss of sleep, headaches, and other physical and emotional distress.

50.     Cogdell's physician ordered her out of work until March 16, 2009.

51.     Later on March 5, 2009, the Philadelphia District Manager communicated via email to Cogdell that there was a "new career opportunity" which she would secure in written form.  Cogdell never received written confirmation of a "new career opportunity."

52.     On information and belief, the "opportunity" the Philadelphia District Manager was authorized to offer Cogdell was a demotion back to the lower-paying Springfield Store Manager position.

53.     Cogdell viewed managing the Springfield store as both a demotion and as part of WET SEAL's pattern of segregating African-American Store Managers by assigning them to stores in mixed or largely African-American markets.

54.     On March 6, 2009, Arneklev called Cogdell and told her "not to worry" about the Springfield store and said that she could work in the King of Prussia store.

55.     Cogdell agreed to work at the King of Prussia store on the condition and with the understanding that issues of racism in the workplace would be addressed there before she returned.  Cogdell's next day of work at the King of Prussia store was on March 16, 2009.

56.     Cogdell reasonably expected that while she was out, WET SEAL would have at least initiated an investigation into racially motivated employment practices under Bachman, and would have reassured employees that racial discrimination in any form would not be tolerated by WET SEAL.

57.     Instead, Cogdell learned that WET SEAL had taken no steps to

1   address employee concerns about racial discrimination by management when she

2   was approached, the same day, by African-American employees of WET SEAL

3   who had overheard Bachman's comments about Cogdell to the District Manager

4   and had received no follow up from WET SEAL about discrimination and racism in

5   the workplace.

6       58.    Cogdell was shocked to learn that WET SEAL had taken no steps to

7   deal with issues of racism, which were clearly known to WET SEAL before her

8   termination and return to work.  She advised Arneklev by telephone that she would

9   finish out the day but would not continue to work for WET SEAL because the

10  company had done nothing to address employees' concerns about racism in the

11  workplace.  Arneklev said she was "sorry" but made no offer to address the

12  situation.

13      59.    Cogdell believed that employment under these conditions had become

14  intolerable.  A reasonable African-American employee in the same circumstances

15  would have concluded that continued employment would be intolerable.

16  Accordingly, Plaintiff Cogdell was constructively terminated by WET SEAL.

17      60.    After her constructive discharge by WET SEAL, Cogdell attempted to

18  find work in retail sales but was unable to secure a position despite her experience

19  and qualifications.  On information and belief, WET SEAL discriminated and

20  retaliated against Cogdell because of her race and opposition to discriminatory

21  practices by failing to provide fair references to potential employers.

22      61.    On information and belief, Cogdell was replaced as Store Manager at

23  the King of Prussia store by a white employee with a poor performance record and

24  less experience and who was paid more than Cogdell was.

25      62.    On information and belief, WET SEAL routinely promoted white

26  females to store management and higher positions despite their being unqualified or

27  poor performers according to WET SEAL's internal standards, including, for

28  example, promoting the white manager of the Granite Run store to a high profile

1  store shortly after Bachman described that store as "embarrassing and totally
2  unacceptable-[one] of the worst stores I have seen in a long time!" (Exhibit 1.)

3      63.     On information and belief, in or around June 2009, Bachman
4  complimented a Maryland District Manager for her rapid comprehension of the
5  "WET SEAL look," after Bachman toured a store that had previously been staffed
6  largely by African Americans but was then staffed entirely or mostly with white
7  employees. The District Manager understood this comment to refer to the racial
8  composition of the store employees.

9      64.     Although as Store Manager she was charged with some hiring
10 responsibilities, at no time during her employment did Cogdell receive any training
11 regarding equal opportunity policies or procedures at WET SEAL.

12                          **PLAINTIFF HAWKINS**

13     65.     Plaintiff Kai Hawkins ("Hawkins") first began working for WET
14 SEAL in or around July 2002 at the Plymouth Meeting Pennsylvania store. She
15 was promoted to Store Manager within several months. Hawkins was a successful
16 Store Manager who was particularly good at reducing "inventory shrink" in stores
17 she managed, and received commendation and a bonus for that success from WET
18 SEAL.

19     66.     In 2003 and 2004, Hawkins was assigned to manage WET SEAL
20 stores in the Oak Ridge Mall in San Jose, California, and the Valley Mall in Santa
21 Clara, California. Both stores had high shrink before Hawkins took over as Store
22 Manager, and both had much improved numbers under Hawkins.

23     67.     Hawkins returned to the Philadelphia region in 2004. Although she
24 had been promised a "high profile" store such as King of Prussia, Hawkins was
25 instead assigned to the Gallery Store at Market East in Philadelphia, a store with a
26 much larger percentage of minority shoppers. Hawkins asked repeatedly to be
27 transferred to the King of Prussia store, but was never given the opportunity to
28 manage this store, despite success in all her assignments.

68.     In 2008, Hawkins was transferred to the Cherry Hill New Jersey store, which has a larger percentage of minority shoppers than King of Prussia. The Cherry Hill store was visited by Thomas, Harris and Bachman at or around the end of 2008. In or around late February or early March, 2009, Hawkins was told by the Philadelphia District Manager that the executive management of WET SEAL had said that if Hawkins did not "diversify" the staff at the Cherry Hill store by hiring more non-black employees within thirty days, she would be terminated. At that time, the Cherry Hill store employees were Hawkins (African-American), one Co-Manager (Asian-American), two Assistant Managers (one African-American and one white), and approximately eight Sales Associates (four African-American, three Latina, and one white).

69.     On or about March 3, 2009, Hawkins saw the "huge issue" email from Bachman (Exhibit 1). Hawkins was highly offended, but as a single mother she did not feel she had alternatives but to keep working for WET SEAL. On information and belief, WET SEAL executives were aware that Bachman's email had been forwarded to WET SEAL employees, including Hawkins. In March 2009, the Philadelphia District Manager told Hawkins that WET SEAL management wanted to get rid of her and that she should "watch her back."

70.     After both the Regional and District Managers to whom she reported left the company, in March 2009, the new District Manager made hiring decisions for the Cherry Hill store, and hired non-minority employees, rejecting without explanation an African American recommended by Hawkins. This was contrary to the usual WET SEAL practice, which was for Store Managers to make hiring decisions for their store. On information and belief, these hiring decisions were taken over by the new District Manager in order to assure that new hires at the Cherry Hill store were white.

71.     Shortly after the new District Manager assumed her duties, she gave Hawkins a written discipline for shrink, despite the fact that the store audit upon

1   which the discipline was based included a period before Hawkins began to work in

2   her store, and WET SEAL senior management were aware that the sensor tags did

3   not work with the Cherry Hill equipment.  Hawkins protested the discipline to HR

4   but never received a response.  On information and belief, this discipline was

5   unwarranted, was out of proportion to what was imposed on similarly-situated

6   white Store Managers, and was a pretext to begin the process of terminating

7   Hawkins because of her race.

8          72.    By 2010, Hawkins was one of only two African-American Store

9   Managers in the Philadelphia District; the other was assigned to the Gallery

10   location Hawkins had previously managed.  Hawkins was advised by the

11   Philadelphia District Manager in February 2010 that she was terminated for having

12   low sales and high shrink results.

13          73.    In fact, the Cherry Hill shrink figures had improved since Hawkins

14   took over as Store Manager and were continuing to improve, at the time of her

15   termination.  Nor had Hawkins been afforded the benefit of mentoring or

16   progressive discipline, which, on information and belief, was routinely offered to

17   similarly-situated white Store Managers.

18          74.    When she had sought transfer to other stores, Hawkins was told that it

19   was WET SEAL policy that Store Managers in high shrink stores are not eligible

20   for promotion or transfer; however, in or around November 2009, an Asian-

21   American Co-Manager from the Cherry Hill store was promoted to manage an

22   Arden B. store.

23          75.    Although as Store Manager Hawkins was charged with hiring

24   subordinates, at no time during her employment with WET SEAL did Hawkins

25   receive any training regarding equal opportunity policies or procedures.

26          76.    Hawkins observed that African-American employees were terminated

27   despite doing a good job and without any explanation.  On information and belief,

28   an African-American employee she supervised, K. Benson, was singled out for

1   termination by Bachman because of her race, as she was a good worker who was

2   liked and respected by her colleagues and by the Philadelphia District Manager,

3   who cried as she terminated Benson.

4       77.    On information and belief, during the last two years of her

5   employment at WET SEAL Hawkins' performance was as good as or better than

6   that of white Store Managers.  Despite WET SEAL policy that employees receive

7   regular reviews, Hawkins received no performance reviews during her last two

8   years at WET SEAL, which made her ineligible to receive any raise.  On

9   information and belief, similarly-situated white employees received performance

10  reviews and raises during this period.

11      78.    On information and belief, similarly-situated white employees with

12  lesser qualifications were promoted to higher paying positions than Hawkins.

13      79.    After her termination, Hawkins sought employment.  Despite her

14  qualifications, she was unable to secure employment until November 2011.  On

15  information and belief, WET SEAL discriminated against and retaliated against

16  Hawkins because of her race and opposition to discriminatory practices by failing

17  to provide a fair reference to potential employers.

18                    **PLAINTIFF SAINT-HILAIRE**

19      80.    Plaintiff Myriam Saint-Hilaire ("Saint-Hilaire") was hired by WET

20  SEAL in January 2007 as an Assistant Manager at WET SEAL's King of Prussia

21  store.  She had retail loss prevention experience from her prior work at one of WET

22  SEAL's competitors.

23      81.    Although she understood that she was going to be hired into the Co-

24  Manager position, Saint-Hilaire was given the title of Assistant Manager but

25  required to perform the duties of a Co-Manager.

26      82.    According to WET SEAL policy, Saint-Hilaire should have received

27  periodic written performance reviews.  Salary increases are provided as a result of

28  positive reviews.  Saint-Hilaire never received a written performance review.

1    Every time she was due for a review, her Store Manager made an excuse to explain
2    why Saint-Hilaire would not receive a review.  As a result, Saint-Hilaire never
3    received the pay increases that would have resulted from positive reviews. On
4    information and belief, similarly-situated white employees received performance
5    reviews and periodic raises.

6    83.    Saint-Hilaire's performance at WET SEAL should have resulted in
7    positive performance reviews.

8    84.    On one occasion in 2007, Saint-Hilaire was written up by her Store
9    Manager for being late (after working late the night before—hours past her
10   scheduled shift—because the store was understaffed), but white associates were
11   frequently late and not written up.

12   85.    In or around December 2007, Thomas, then-President and CEO of
13   WET SEAL, visited the King of Prussia store. A few weeks after Thomas's visit to
14   the King of Prussia store, Saint-Hilaire heard from the Philadelphia District
15   Manager that she had been present with Thomas and three or four other high-level
16   corporate executives of WET SEAL when Thomas or his assistant said that they
17   were "not comfortable" with the staff at the King of Prussia store, and that while
18   the store had been doing well, it would do better if the employees had a "different
19   look" that would attract more customers.  The Philadelphia District Manager was
20   told  to hire an all-new management staff, keeping only the Store Manager (who
21   was white) and an African-American Assistant Manager with a very light
22   complexion.  The District Manager later told Saint-Hilaire that Thomas and the
23   other high-level officials wanted her to fire the African-American employees, and
24   that she was under intense pressure to fire the African-American employees in the
25   King of Prussia store.

26   86.    Saint-Hilaire was upset by what the Philadelphia District Manager told
27   her.  The Philadelphia District Manager said that she would do her best to keep her,
28   and that Saint-Hilaire should "stay under the radar" by keeping the store as clean as

1    possible and not doing anything that would make her a target to be fired.

2         87.    At around the same time, in late 2007 or early 2008, the King of

3    Prussia store was understaffed.  One Associate said that she knew someone with

4    retail experience who could work in the store.  The Store Manager, who was white,

5    asked, "Is she black?" and when the Associate said yes, the Store Manager said that

6    she had been told that they could not hire any more African-Americans, because

7    there were too many African-Americans and the company "needed diversity."

8         88.    The Store Manager also told Saint Hilaire and other store employees

9    that they "need to hire more diversity," that they had a lot of African-American

10   employees, and that they should try to attract the kind of clientele that shopped at

11   their more upscale competitors, such as Abercrombie & Fitch.

12        89.    In mid-2008, a white, tall, thin, blond Sales Associate named Leslie

13   was hired to work in the King of Prussia store.  The Store Manager hired Leslie

14   because she thought she could "help them" with the "diversity issue" and because

15   she fit the "brand image," which was understood to mean white females.  On

16   information and belief, Leslie was also approved for higher pay than the other

17   Associates.  When Leslie later indicated that she might leave WET SEAL, she was

18   offered a raise because the management wanted to keep her in the store.

19        90.    On information and belief, the Vice President for Store Operations told

20   the Philadelphia District Manager that they needed to hire "people like Leslie for

21   the WET SEAL look" to "be profitable in every way."

22        91.    Saint-Hilaire went on maternity leave in late 2008.  Several weeks

23   after she returned from leave, she was fired by the Philadelphia District Manager on

24   February 13, 2009.  The District Manager was crying when she fired Saint-Hilaire.

25        92.    The District Manager told Saint-Hilaire that she was being fired

26   because she was not covering all the areas in the store while training a new

27   associate, and that she did not greet a manager who came into the store.  White

28   employees were not disciplined for such conduct, and the store was too short-

1   staffed to allow full coverage of the store.  On information and belief, these reasons

2   were a pretext for terminating Saint-Hilaire based on race.

3       93.    On information and belief, the Philadelphia District Manager was

4   instructed by senior management to fire Saint-Hilaire because she was African-

5   American.

6       94.    On information and belief, during Saint-Hilaire's employment at WET

7   SEAL, she was paid less than similarly-situated white employees, and was denied

8   promotions to better paying positions that less qualified white employees received.

9       95.    On information and belief, all or nearly all of the current employees in

10  the King of Prussia store are white.

11      96.    On March 9, 2009, Saint-Hilaire filed a race discrimination charge

12  with the EEOC alleging that her termination was discriminatory.  Saint-Hilaire has

13  not received a determination from the EEOC.  On information and belief, the EEOC

14  is still investigating her charge.

15      97.    After her termination, Saint-Hilaire attempted to find employment.

16  WET SEAL refused to give her a reference or even verify her employment.  On

17  information and belief, this refusal to verify employment or give a reference was in

18  retaliation to Saint-Hilaire's opposition to WET SEAL's discriminatory practices

19  and filing of an EEOC charge and was intended to and did interfere with Saint-

20  Hilaire's ability to find subsequent employment.

21              **FIRST CLAIM FOR RELIEF: DISCRIMINATION IN**

22                    **VIOLATION OF 42 U.S.C. § 1981**

23      98.    Paragraphs 1-97 are incorporated by reference.  This claim is brought

24  on behalf of Plaintiffs and the class they represent.  The foregoing conduct violates

25  42 U.S.C. § 1981 because such conduct discriminates against the Plaintiffs and

26  class on the basis of their color and race.

27      99.    As a result of WET SEAL's discriminatory conduct, Plaintiffs and the

28  class they represent have been denied equal pay and have lost compensation and

1  benefits they would have been entitled to in the absence of discrimination, and have

2  suffered emotional distress and consequential damages.

3       100.  WET SEAL has performed the acts alleged with malice, fraud,

4  oppression, and/or reckless indifference to the protected rights of Plaintiffs and the

5  class. Plaintiffs and the class are thus entitled to recover punitive damages in an

6  amount according to proof.

7          **SECOND CLAIM FOR RELIEF: RETALIATION IN**

8             **VIOLATION OF 42 U.S.C. § 1981**

9       101.  Paragraphs 1-97 are incorporated by reference. This claim is made on

10  behalf of Plaintiffs Cogdell, Hawkins, and Saint-Hilaire.

11       102.  The foregoing conduct violates 42 U.S.C. § 1981 because such

12  conduct was in retaliation to the opposition by Cogdell, Hawkins, and Saint-Hilaire

13  of discrimination on the basis of race and color. As a result of WET SEAL's

14  discriminatory conduct, Plaintiffs Cogdell, Hawkins, and Saint-Hilaire have lost

15  compensation and benefits to which they would have been entitled in the absence of

16  discrimination, and have suffered emotional distress and consequential damages.

17       103.  WET SEAL has performed the acts alleged with malice, fraud,

18  oppression, and/or reckless indifference to the protected rights of Cogdell,

19  Hawkins, and Saint-Hilaire. Cogdell, Hawkins, and Saint-Hilaire are thus entitled

20  to recover punitive damages in an amount according to proof.

21                 **PRAYER FOR RELIEF**

22  WHEREFORE, Plaintiffs pray for relief as follows:

23      1.    An order reinstating Plaintiffs and class members to their rightful

24  positions;

25      2.    All lost pay and benefits sustained by Plaintiffs and the class as a result

26  of WET SEAL's conduct according to proof;

27      3.    Compensatory damages for emotional distress;

28      4.    Front pay for Plaintiffs and the class;

1      5.     Punitive damages for Plaintiffs and the class;

2      6.     Costs incurred, including reasonable attorneys' fees to the extent

3 allowable by law;

4      7.     Pre-judgment and post-judgment interest, as provided by law; and

5      8.     Such other and further legal and equitable relief as this Court deems

6 necessary, just, and proper.

7                    **JURY TRIAL DEMAND**

8      Plaintiffs on behalf of themselves and all other similarly situated, demand a

9 jury trial in this action for all claims so triable.

10

11 Dated: July 12, 2012             By: _____

12                                Brad Seligman

13                              Brad Seligman (SBN 83838)

14                              LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.

15                              476 9th Street Oakland, California 94607

16                              Telephone: (510) 839-6824 Facsimile: (510) 839-7839

17                              bseligman@lewisfeinberg.com

18

19                              *Attorneys for Plaintiffs and the Proposed Class*

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

—— Original Message ——   *Vice President of Wet Seal*
From: Barbara Bachman
To: Cristina Sanchez
Cc: Barbie Harris
Sent: Mon Mar 02 14:33:43 2009
Subject: FW: Barbara/Marti/Andrea Store Visit Notes

Christina,

Please review and we can talk tomorrow!  I really need you to work around the clock to get these issues resolved and get this market turned around immediately!  I will call you sometime tomorrow!  Thanks!  bb

Store Visits – Maryland, and Philadelphia Markets

20 stores ( 6 AB & 14 WS)

Stores Visited:

WS Lake Forest

AB Montgomery

WS Owing Mills

WS/AB Towson

WS White Marsh

WS Galleria at Harbor

WS Arundel Mills

WS Annapolis

WS Tyson's

WS/AB King of Prussia

WS Plymouth Meeting

AB Willow Grove

WS/AB Cherry Hill

AB Walnut Street

WS Gallery at Market



WS Deptford

WS Springfield

Global Issues:

Lack of Leadership

DD's need clarity of expectations - DD's must work around the clock and do what it takes to get this market turned around

Store Teams - need diversity African American dominate - huge issue

Harbor Place Galleria -- Annapolis and the Granite Run stores were embarrassing and totally unacceptable- Some of the worst stores I have seen in a long time!

Majority of stores are not disciplined in following marketing and visual directives - tend to do their own thing

Stores are borrowing bags from other stores (Galleria - Harbor Place borrowed a case from Victoria Secret Cherry Hill using WS bags)

The majority of stores do not understand the "shop" concept within the store

Majority of stores had not started or completed the hanger size ring task

WS King of Prussia ——— Nicole Cogdell

Store Manager is not right for this store - she has been in this store for a month!

The new fixture package in this store looked fantastic!!


AB King of Prussia

Staff appeared friendly

Store presented well


WS Plymouth Meeting

Melisa and Tina (Melisa - Hot Topic look)

Employee came to work 40 minutes early and started to watch a personal video in the backroom

Complained of Air conditioning being broken - people have been sent to fix it twice and still not fixed

Empty wall unit cannot be used as it has caused 2 fires

"E" of Wet Seal -- flames

Visually solid

AB Willow Grove

Staff was friendly

Strong week – up 30 percent

Need to check damages

"Backroom Inspection" log still posted on backroom door – No longer use

WS Cherry Hill

WS - Store was visually unappealing -

Long lines at the cash wrap and fitting rooms - of the 8 fitting rooms they had - one was housing fixtures and could not be used

Nordstrom - opening May 17th

Mall renovation looked good. Lots of traffic - 2 level XXI going in

Missing Clearance BIG1 bags 1 cent – rounder not signed

Did not execute Valentine merchandise markdown

Take down mannequins that are high in the air

Marie – Andrea, Matt and Nine "adopting" this store

Had not even started to execute the hanger size rings

Need to get some of the extra mannequins form Tyson's

AB Cherry Hill

Holiday Policy signs were still posted at the cash wrap

Kamal – Asst working – did not appear friendly

Store using WS bags

AB Walnut Street

Great layout of store

Staff was friendly

DD communicated an LP issue

Leatherette jackets doing well

Good traffic



WS Gallery at Market

Good Manager for this store

EAS system has not worked properly in a year!  If you throw the merchandise in the air up high = it activates the alarm!

*1 fitting room door broken*

Sent a vacuum – needs bags

Directed store to put ENR merchandise adjacent from the cash wrap

Candidate for Panty tables?

Lease does not expire until 2013 – store is the original Contempo store with a small face lift

DD has only been there twice since November

Guard service – not good – Manager has to tell him not to read the newspaper

WS Deptford

Store is AAA – borderline AAAA – inventory level and assortment was worse than an A store

Staff was very friendly – Liked the store manager – Stephanie – a 10!!!

Granite Run

Store had hung the BA Peace sign above the platform

Store had no music on - the player had broken the day before

Store was embarrassing!  Visuals and outfits looked ridiculous!

WS Springfield

New Store Manager lacked fast paced retail skill – bad hire

Stephanie from Deptford was in this store training her

Gave direction to rework scarf and boot wall

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself □)
NICOLE COGDELL, KAI, HAWKINS, and MYRIAM SAINT-HILAIRE,
on behalf of themselves and all others similarly situated.

**DEFENDANTS**
THE WET SEAL, INC., THE WET
SEAL RETAIL, INC., WET SEAL
GC, INC., and WET SEAL GC, LLC.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Brad Seligman, Bill Lann Lee, Julie Wilensky
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, CA 94607
(510)839-6824

Debo P. Adegbile, Elise Boddie,
ReNika C. Moore, Ria A. Tabacco
NAACP Legal Defense & Education Fund, Inc.
99 Hudson Street, Suite 1600
New York, NY 10013
(212) 965-2200

Nancy C. DeMis, Susan R. Fiorentino
Gallagher, Schoefel, Surkin, Chapain & Demis, P.C.
25 West Second Street
Media, PA 19053
(610)565-4600

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant   □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify):   □ 6 Multi-District Litigation   □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   □ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   □ No     □ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Discrimination and retaliation in violation of 42 U.S.C. § 1981.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | □ 530 General | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 535 Death Penalty | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 480 Consumer Credit | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| □ 490 Cable/Sat TV | | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | □ 610 Agriculture | □ 820 Copyrights |
| □ 810 Selective Service | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 441 Voting | □ 620 Other Food & Drug | □ 830 Patent |
| □ 850 Securities/Commodities/ Exchange | □ 160 Stockholders' Suits | □ 362 Personal Injury- Med Malpractice | ☒ 442 Employment | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 875 Customer Challenge 12 USC 3410 | □ 190 Other Contract | □ 365 Personal Injury- Product Liability | □ 443 Housing/Acco- mmodations | □ 630 Liquor Laws | SOCIAL SECURITY |
| □ 890 Other Statutory Actions | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | □ 640 R.R. & Truck | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 196 Franchise | | □ 445 American with Disabilities - Employment | □ 650 Airline Regs | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 690 Other | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | □ 463 Habeas Corpus- Alien Detainee | | | □ 865 RSI (405(g)) |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| □ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

**FOR OFFICE ONLY:**   Case Number:   **SACV 12 - 01138 AG (ANx)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

Case 8:12-cv-01138-AG-AN   Document 1   Filed 07/12/12   Page 30 of 41   Page ID #:30

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Nicole Cogdell - Pennsylvania<br>Kai Hawkins - Pennsylvania<br>Myriam Saint-Hilaire - Pennsylvania |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| The Wet Seal, Inc. - Orange    Wet Seal GC, LLC - Orange<br>The Wet Seal Retail Inc. - Orange<br>Wet Seal GC, Inc. - Orange | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date 7/12/2012

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 2 of 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1138 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [_] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated <br><br> _____ <br> *Plaintiff(s)* <br> v. <br> THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC <br> _____ <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.

**SACV 12 - 01138 AG (ANx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 7|12|12          **DENISE VO**
_____
*Signature of Clerk or Deputy*



Civil Action No.

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                          *Server's signature*

                                           _____
                                                        *Printed name and title*

                                           _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated <br><br> *Plaintiff(s)* <br><br> v. <br><br> THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.  **SACV 12 - 01138 AG (ANx)** |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

The Wet Seal, Inc.
c/o CSC - Lawers Incorporating Service
2710 Gateway Oaks Dr. STE 150N
Sacramento, CA 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brad Seligman
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, CA 94607

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

DENISE

Date: 7|12|12

Signature of Clerk or Deputy Clerk

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated | ) ) ) ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) ) | **SACV 12 - 01138 AG (ANx)** |
| THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC | ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

        The Wet Seal Retail, Inc.
        c/o Ethel Jones
        27972 Burbank
        Foothill Ranch, CA 92610

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

        Brad Seligman
        Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
        476 9th Street
        Oakland, CA 94607

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

DENISE

Date: 7|12|12

                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated <br><br> *Plaintiff(s)* <br> v. <br><br> THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No.    **SACV 12 - 01138 AG (ANx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Wet Seal GC, Inc.
c/o CSC - Lawers Incorporating Service
2710 Gateway Oaks Dr. STE 150N
Sacramento, CA 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brad Seligman
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, CA 94607

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

DENISE

Date: 7|12|12

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                     *Server's signature*

                                              _____
                                                     *Printed name and title*

                                              _____
                                                     *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| NICOLE COGDELL, KAI HAWKINS, and MYRIAM SAINT-HILAIRE, on behalf of themselves and all others similarly situated <br><br> *Plaintiff(s)* <br><br> v. <br><br> THE WET SEAL, INC., THE WET SEAL RETAIL, INC., WET SEAL GC, INC., and WET SEAL GC, LLC <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. **SACV 12 - 01138 AG (ANx)** |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Wet Seal GC, LLC
c/o CSC - Lawers Incorporating Service
2710 Gateway Oaks Dr. STE 150N
Sacramento, CA 95833

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Brad Seligman
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, CA 94607

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

DENISE

Date: 7|12|12

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: